# EXHIBIT A

| STATE OF WISCONSIN | CIRCUIT COURT | MILWAUKEE COUNTY |
|---|---|---|

**CITY OF MILWAUKEE**
200 East Wells Street
Milwaukee, WI 53202,

     Plaintiff,

v.

**BIRD RIDES, INC.**
406 Broadway #369
Santa Monica, CA 90401,

and

**TRAVIS VANDERZANDEN**
7606 Road to Singapore
San Diego, CA 92127,

     Defendants.

**HON. WILLIAM S. POCAN BR. 26**

Case No.:

Case Code: 30704
Other Injunction or Restraining Order



FILED AND
AUTHENTICATED

JUL 0 6 2018

JOHN BARRETT
Clerk of Circuit Court

**SUMMONS**

---

THE STATE OF WISCONSIN TO EACH PERSON NAMED ABOVE AS A DEFENDANT:

YOU ARE HEREBY notified that the plaintiff named above has filed a lawsuit or other legal action against you. The complaint, which is attached, states the nature and basis of the legal action.

Within forty-five (45) days of receiving this summons, you must respond with a written answer, as that term is used in Chapter 802 of the Wisconsin Statutes, to the complaint. The court may reject or disregard an answer that does not follow the requirements of the statutes. The answer must be sent or delivered to the court, whose address is 901 North 9th Street, Milwaukee, Wisconsin 53233, and to Grant F. Langley, City Attorney, by Deputy City Attorney,

1

Adam B. Stephens whose address is 200 East Wells Street, Milwaukee, Wisconsin 53202. You may have an attorney help or represent you.

If you do not provide a proper answer within forty-five (45) days, the court may grant judgment against you for the award of money or other legal action requested in the complaint, and you may lose your right to object to anything that is or may be incorrect in the complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or in the future and may also be enforced by garnishment or seizure of property.

Dated at Milwaukee, Wisconsin this 6th day of July, 2018.

GRANT F. LANGLEY
City Attorney

ADAM B. STEPHENS, Deputy City Attorney
State Bar No. 1033108

Attorneys for the Plaintiff,
City of Milwaukee, Wisconsin

ADDRESS:
800 City Hall
200 East Wells Street
Milwaukee, WI 53202
Telephone: (414) 286-2601
Fax: (414) 286-8550
asteph@milwaukee.gov

1047-2018-1407:250551v2

2

STATE OF WISCONSIN      CIRCUIT COURT      MILWAUKEE COUNTY

**CITY OF MILWAUKEE**
200 East Wells Street
Milwaukee, WI 53202,

      Plaintiff,

v.

**BIRD RIDES, INC.**
406 Broadway #369
Santa Monica, CA 90401,

and

**TRAVIS VANDERZANDEN**
7606 Road to Singapore
San Diego, CA 92127,

      Defendants.

Case No.:

Case Code: 30704
Other Injunction or Restraining Order



FILED AND
AUTHENTICATED

JUL 0 6 2018

JOHN BARRETT
Clerk of Circuit Court

## COMPLAINT

Plaintiff, City of Milwaukee, by its attorneys, Grant F. Langley, City Attorney, by Adam B. Stephens, Deputy City Attorney, Saveon D. Grenell, Assistant City Attorney, and Rose Simon-Silva, Assistant City Attorney, as and for a Complaint against the above-named defendants, alleges and shows to the Court as follows:

### PARTIES

1. The plaintiff, City of Milwaukee (the "City"), is a municipal corporation organized and existing under the laws of the State of Wisconsin, with its principal offices located at 200 East Wells Street, Milwaukee, Wisconsin 53202.

2. Defendant Bird Rides, Inc. ("Bird") is a foreign corporation incorporated in the State of Delaware on April 27, 2017, and it has a registered agent of National Registered Agents, Inc.,

3

Case 2:18-cv-01066-JPS   Filed 07/12/18   Page 3 of 58   Document 1-1

160 Greentree Drive, Suite 101, Diver, Delaware, 19904. On June 12, 2017, Bird registered in the State of California as a foreign corporation and listed a principal place of business of 10531 4S Commons Drive, Suite 242, San Diego, California, 92127, with its agent for service of process listed as Travis VanderZanden at the same address. On May 1, 2018, Bird filed a statement of information with the California Secretary of State changing its principal business office to 406 Broadway, #369, Santa Monica, CA 90401. On June 21, 2018, Bird filed a statement of information with the California Secretary of State changing its agent for service of process to National Registered Agents, Inc.

3. Defendant Travis VanderZanden ("VanderZanden") is an adult resident of the State of California whose address is 7606 Road to Singapore, San Diego, CA 92127. VanderZanden is Bird's chief executive officer and chief financial officer.

## VENUE

4. This Court is the proper venue for this action because the defendants do substantial business in Milwaukee County.

## SUBJECT MATTER JURISDICTION

5. An action to enjoin a public nuisance may be commenced and prosecuted by the City without leave of court pursuant to Wis. Stat. § 823.02.

6. This Court has jurisdiction over an action in which the City seeks to impose forfeitures for violations of municipal ordinances of the municipality because equitable relief is also demanded pursuant to Wis. Stat. §755.045(1)(b).

## ALLEGATIONS

7. Upon information and belief, Bird operates a business that rents to the public Xiaomi Mi M365 electrically-powered motorized scooters or similar models ("Motorized Scooters").

4

8. The Motorized Scooter is a 45-inch long motor vehicle equipped with a narrow platform that is raised approximately 3 ½ inches above the ground by two tandem 8 ½-inch wheels and a set of 17-inch wide handlebars centered on top of a pole positioned about 40 inches above the ground. There are no seats or foot pedals. Operators can stand on the platform and rotate the handlebars to steer the vehicle's front wheel. The handlebars also have a brake handle and a mechanism that activates an electric motor to propel the vehicle forward to speeds of up to 15 ½ miles per hour.

9. The Motorized Scooter weighs about 28 pounds and the manufacturer has assigned a gross vehicle weight rating of 248 pounds.

10. Upon information and belief, Bird deposited one hundred Motorized Scooters on public rights-of-way in the City of Milwaukee on or before June 27, 2018.

11. Upon information and belief, VanderZanden authorized or directed the depositing of those Motorized Scooters in the City of Milwaukee.

12. Bird makes the Motorized Scooters available for rental by the public through use of the global positioning system ("GPS") and an internet-based application. Any person who utilizes the internet-based application may locate all scooters nearby using the GPS locating technology installed in each motorized scooter. The user may then select a particular Motorized Scooter and provide payment information to Bird in exchange for Bird making that Motorized Scooter operable for that user. Bird charges a fee to that user that varies based upon how much time the user operates the Motorized Scooter.

13. There are no permanent locations where Motorized Scooters must be picked up or placed after the user chooses to no longer operate them. Users can leave them anywhere and Bird promotes that fact as a selling point.

14. Upon information and belief, all Motorized Scooters were manufactured after 1969 and do not meet manufacturer or importer certification label requirements as specified in 49 CFR 567 and are not Kei class vehicles.

15. Bird describes its internet-based application as "a mobile app that gives you access to shared personal electric vehicles that can be picked up and dropped off anywhere."

16. Bird encourages users for their "work commute, across college campuses, with friends, or simply just to spread your wings and get some fresh air!"

17. Bird publishes diagrams that instruct its users to place Motorized Scooters in the public right-of-way when users no longer want to operate them.

**FIRST CAUSE OF ACTION:**
**IMPOSITION OF FORFEITURE FOR CONSENTING TO THE OPERATION OF**
**UNREGISTERED MOTOR VEHICLES ON A HIGHWAY**

18. Bird has consented to the operation of its Motorized Scooters on public highways an unknown number of times to many users within the City of Milwaukee.

19. At the time of their operation, none of the Motorized Scooters in question were registered or capable of being registered in the State of Wisconsin.

20. Each and every instance in which Bird consented to the operation of its unregistered Motorized Scooters on a highway is a violation of Wis. Stat. § 341.04(1).

21. Any person who violates Wis. Stat. § 341.04(1), where the vehicle used has a gross vehicle weight rating of 10,000 pounds or less may be required to forfeit not more than $200 for each and every instance.

22. VanderZanden may be held personally liable for any of Bird's unpaid forfeitures because the legal fiction of a corporation may not be used to shield its officers from responsibility for the corporate officers' law violations.

6

## SECOND CAUSE OF ACTION:
## PUBLIC NUISANCE

23. In response to a request by Deputy City Attorney Adam Stephens to cease and desist business operations in the City on June 27, 2018, Bird refused to do so through communication from its counsel.

24. Upon information and belief, Bird has committed the same acts in other municipalities within the United States by depositing its Motorized Scooters on public streets and sidewalks without notice or adherence to law and consenting to the operation of those Motorized Scooters on public highways with disregard as to whether such operation was legal.

25. Bird causes harm to the public because its Motorized Scooters obstruct public rights-of-way when users leave them across sidewalks and in streets.

26. Bird causes harm to the public because its Motorized Scooters emit a noise when they are moved without authorization or power stored within their batteries is depleted to low levels.

27. Bird causes harm to the public by failing to inform their users that it is illegal to operate the Motorized Scooter on sidewalks and streets.

28. Bird causes harm to the public by failing to inform their users that they could be arrested and prosecuted for operating a motor vehicle under the influence of an intoxicant if they operate the Motorized Scooter on the sidewalk or street with a prohibited blood alcohol concentration or under the influence of a restricted controlled substance.

29. Bird causes harm to the public by failing to ensure that operators of its Motorized Scooters possess a valid driver's license.

30. Bird enables, encourages, and profits from its ongoing and continuous violation of Wis. Stat. § 341.04(1) making the operation of its motorized scooter rental business a public nuisance per se.

7

31. The City is entitled to injunctive relief and an order requiring the defendants to abate the repeated, ongoing and continuous violation of the Milwaukee Code of Ordinances and Wisconsin State Statutes.

## DEMAND FOR JUDGMENT AND RELIEF

WHEREFORE, the plaintiff, City of Milwaukee, demands judgement and relief as follows:

I. Judgment that Bird Rides, Inc. has violated Wis. Stat. § 341.04(1) each and every instance in which it consented to the operation of its unregistered Motorized Scooters on a public sidewalk or street since June 27, 2018.

II. Judgment declaring the defendants' business model of renting unregistered Motorized Scooters for public use on the highways is a public nuisance.

III. Relief in the form of a forfeiture against Bird Rides, Inc., and Travis VanderZanden, jointly and severally, for $200 for each and every instance in which Bird consented to the operation of its unregistered Motorized Scooters on a public sidewalk or street since June 27, 2018.

IV. Relief in the form of an order that Bird abate the nuisance by removing all Motorized Scooters from all public rights-of-way within 24 hours of the court's order.

V. Relief in the form of an order authorizing the City to abate and remove all Motorized Scooters left on the public right-of-way after the time for Bird to abate the nuisance has elapsed.

VI. Relief in the form of a permanent injunction against the defendants, including any employees, independent contractors, operators, managers, or agents of the defendants that prohibits them from making unregistered motor vehicles available for rent to the public.

8

VII.  Relief in the form of an order granting the City of Milwaukee its costs for the collection, inventory, and storage of any Bird Motorized Scooters removed by the City.

VIII.  Relief in the form of an order awarding the City of Milwaukee its damages, costs, disbursements, and attorney fees as may be authorized by statute; and

X.  Any further relief the court may deem as appropriate.

Dated at Milwaukee, Wisconsin this 6th day of July, 2018.

GRANT F. LANGLEY
City Attorney

ADAM B. STEPHENS, Deputy City Attorney
State Bar No. 1033108

SAVEON D. GRENELL, Assistant City Attorney
State Bar No. 1101138

Attorneys for the Plaintiff,
City of Milwaukee, Wisconsin

ADDRESS:
800 City Hall
200 East Wells Street
Milwaukee, WI 53202
Telephone: (414) 286-2601
Fax: (414) 286-8550
asteph@milwaukee.gov

1047-2018-1407:250551v2

STATE OF WISCONSIN          CIRCUIT COURT          MILWAUKEE COUNTY

**CITY OF MILWAUKEE**
200 East Wells Street
Milwaukee, WI 53202,

     Plaintiff,

v.

**BIRD RIDES, INC.**
406 Broadway #369
Santa Monica, CA 90401,

and

**TRAVIS VANDERZANDEN**
7606 Road to Singapore
San Diego, CA 92127,

     Defendants.

Case No.:

Case Code: 30704
Other Injunction or Restraining Order

---

## NOTICE OF MOTION AND MOTION FOR TEMPORARY INJUNCTION

---

    PLEASE TAKE NOTICE that the Plaintiff, City of Milwaukee ("City"), by its attorneys, Grant F. Langley, City Attorney, by Adam B. Stephens, Deputy City Attorney and Saveon D. Grenell, Assistant City Attorney, will move the Court on the 13 day of July, 2018, at 10 : 00 a.m. in Room 401, Branch 26 of Milwaukee County Circuit Court, pursuant to Wis. Stat. § 823.02 for an Order issuing a Temporary Injunction to abate and prevent the continuance of the public nuisance facilitated by Bird Rides, Inc. ("Bird") in the City and County of Milwaukee, State of Wisconsin.

### MOTION

    The City of Milwaukee moves the Court pursuant to Wis. Stat. § 823.02 for an order granting a temporary injunction as follows:

1

1. Bird must abate the public nuisance by removing all Motorized Scooters from all public rights-of-way in the City of Milwaukee within 24 hours of the court's order;

2. Authorizing the City to abate and remove all Motorized Scooters remaining on the public right-of-way after the time for Bird to abate the nuisance has elapsed pursuant to Milwaukee Code of Ordinances 101-24.7;

3. A temporary injunction against the defendants, including any employees, independent contractors, operators, managers, or agents of the defendants that prohibits them from making Motorized Scooters and other unregistered motor vehicles available for rent to the public in the State of Wisconsin;

4. Any further relief the court may deem as appropriate.

As grounds for this motion, the City states that the facts contained in the complaint and brief in support filed contemporaneously with this motion, constitute individual and collective public nuisances pursuant to Wis. Stat. § 823.02 in that multiple and repeated violations by Bird of Milwaukee Code of Ordinances and Wisconsin State Statutes have occurred and continue to occur; that Bird has failed to act and has stated it will not act to abate the public nuisance; that the continued existence of the public nuisance interferes substantially with the comfortable enjoyment of life, health and safety of Milwaukee citizens who legally operate their vehicles on public streets and those pedestrians on sidewalks and right of ways.

The City is entitled to the issuance of a Temporary Injunction to abate and prevent the continuance or recurrence of the nuisance, including an Order requiring Bird to permanently remove the motorized scooters currently available for rent in the City and County of Milwaukee. The fact that Bird has continued to encourage the illegal and improper use of motorized scooters, the City is entitled to the relief for which it is asking.

2

The City respectfully maintains that if the existence of the public nuisance is demonstrated to the satisfaction of this Court by the attached materials, a Temporary Injunction should be issued as provided in Wis. Stat. § 823.02 as requested by the City. The City is prepared to introduce testimony and evidence at the time and date above for the hearing on this motion to demonstrate that the encouraged illegal use of the motorized scooters are public nuisances and to justify the relief requested.

Dated at Milwaukee, Wisconsin this 6th day of July, 2018.

GRANT F. LANGLEY
City Attorney

Adam B. Stephens
State Bar No. 1033108
Deputy City Attorney

Saveon D. Grenell
State Bar No. 1101138
Assistant City Attorney
Attorney for Petitioner,
City of Milwaukee

ADDRESS:
800 City Hall
200 East Wells Street
Milwaukee, WI 53202
Telephone: (414) 286-2601
Fax: (414) 286-8550
1047-2018-1407:250591

3

STATE OF WISCONSIN       CIRCUIT COURT       MILWAUKEE COUNTY

**CITY OF MILWAUKEE**
200 East Wells Street
Milwaukee, WI 53202,

      Plaintiff,

                    Case No.

v.

                    Case Code: 30704
                    Other Injunction or Restraining Order

**BIRD RIDES, INC.**
406 Broadway #369
Santa Monica, CA 90401,

and

**TRAVIS VANDERZANDEN**
7606 Road to Singapore
San Diego, CA 92127,

      Defendants.

---

## BRIEF IN SUPPORT OF MOTION TO ENJOIN AND REMOVE MOTORIZED SCOOTERS OFFERED FOR RENT ON THE STREETS AND SIDEWALKS IN THE CITY OF MILWAUKEE

---

      Plaintiff City of Milwaukee ("City"), by its attorneys, Grant F. Langley, City Attorney, by Adam B. Stephens, Deputy City Attorney, and Saveon D. Grenell, Assistant City Attorney, hereby offers this brief in support of the City's motion for an order requiring the defendants to cease and desist the distribution and rental of electric motorized scooters in the City of Milwaukee, to immediately remove all of their motorized scooters from Milwaukee's sidewalks and streets and to pay all civil forfeitures and costs associated with their unlawful operation of unregistered vehicles in the City of Milwaukee.

      This civil action is brought by City of Milwaukee, Wisconsin pursuant to Wis. Stat. Chp. 823 in order to obtain declaratory and injunctive relief to enforce Wisconsin motor vehicle law

1

pursuant to Wis. Stat. § 341.04(1) and Milwaukee Code of Ordinances Sections 101-1, 101-2 and 101-24.7 and to also seek monetary forfeiture for the violation of local traffic ordinances pursuant to Wis. Stat. §755.045(1)(b) against defendant Bird Rides, Inc., an "Electric Scooter Rental" company, and Travis Vanderzanden, Bird's chief executive and financial officer.

Based upon a review of the Bird website (https://www.bird.co (last visited, July 3, 2018)) and physical inspections, and upon information and belief, Bird motorized scooters are motor vehicles equipped with a narrow platform that is suspended above the ground by two tandem wheels, no seat or foot pedals, and a handlebar raised by a straight pole above the platform to approximately waist height. Operators can stand on the platform and use a mechanism attached to the handlebars to propel the vehicle forward to speeds of up to 15 miles per hour using an electric motor and steer the vehicle by rotating the handlebars and directing the vehicle's front wheel. Bird makes the motorized scooters available for rental by the public through use of the global positioning system ("GPS") and an internet-based application. Any person who utilizes the internet-based application from a mobile device may locate all scooters nearby using the GPS locating software built into each motorized scooter. The user then selects a particular motorized scooter and provides payment information to Bird in exchange for Bird making the motorized scooter operable for that user. Bird charges a fee to that user that varies based upon how much time the user operates the motorized scooter.

Upon information and belief, on Wednesday, June 27, 2018, defendants, through locally based independent contractors, distributed 100 non-tandem, two-wheeled scooters powered by electric motors on the public sidewalks and private property in the City of Milwaukee for rental by the public via smartphone app for use on public streets. According to the smartphone app description, Bird "is a mobile app that gives you access to shared personal electric vehicles that

can be picked up and dropped off anywhere. Use Bird for your work commute, across college campuses, with friends, or simply just to spread your wings and get some fresh air!"[1] Defendants refer to this business model as "Bird Electric Vehicle Sharing."[2] Upon information and belief, defendant VanderZanden authorized or directed the delivery and distribution of the Bird motorized scooters to the City of Milwaukee, Wisconsin.

**Bird motorized scooters may not be legally operated on the streets and sidewalks in the State of Wisconsin because they are unregistered motor vehicles.**

A motorized scooter is a "vehicle," because it is a device in, upon, or by which any person or property is or may be transported or drawn upon a highway and is not a railroad train, snowmobile, all-terrain vehicle, personal delivery device or electric personal assistive mobility device. Wis. Stat. §340.01(74). Motorized scooters are "motorized vehicles" because they are self-propelled vehicles. Wis. Stat. §340.01(35). Bird's motorized scooters cannot be registered or titled because they were manufactured after 1969 and do not meet manufacturer or importer certification label requirements as specified in 49 CFR 567 or a Kei class vehicle. Wis. Stat. §341.10(6). Motorized scooters are not listed or included amongst the motor vehicles exempted from registration or title requirements. Wis. Stat. §341.05. The operation of unregistered motorized vehicles on public highways in Wisconsin is prohibited. Wis. Stat. §341.04(1). In Wisconsin, the public highway includes not only the roadway, but that part of the improved sidewalk. Wis. Stat. §340.01(22) and (58); *In Interest of E.J.H.,* 112 Wis. 2d 439, 334 N.W.2d 77 (1983); see also, Wisconsin Department of Transportation Correspondence Memorandum regarding Motor Scooters dated May 31, 2005, attached hereto as Exhibit A. As required by Wis. Stat. §349.06, the City of Milwaukee has adopted state traffic law in strict conformity with Wis.

---

[1] See,https://itunes.apple.com/us/app/bird-enjoy-the-ride/id1260842311?_branch_match_id=537713295884730737 (last visited, July 3, 2018).
[2] See, https://www.bird.co (last visited, July 3, 2018).

Stat. Chp. 341. Milwaukee Code of Ordinances (MCO) Sections 101-1, 101-2 and 101-24.7. Thus, Bird's electric motor scooters are prohibited from use on all of Milwaukee's streets and sidewalks adjacent to streets.

By offering the use of Bird motorized scooters for their unlawful use on the City's streets and sidewalks, the defendants have, and continue to aid and abet the ongoing and continuous violation of state and local law and are guilty of a civil municipal forfeiture for each and every Bird motor scooter rental used on City streets and sidewalks since June 27, 2018. Bird encourages its users to violate the law in its instructions by indicating the scooters should be operated on the public street, not sidewalks. Bird also encourages its users to place the scooters in the public right of way when users finish riding the scooters.

Bird motorized scooters are repeatedly used to facilitate the ongoing and continuous violation of the Milwaukee Code of Ordinances and Wisconsin State Statutes and are, therefore, a public nuisance. *State v. H. Samuels Company Inc.*, 60 Wis.2d 631, 211 N.W.2d 417 (1973). The City is entitled to injunctive relief and an order requiring the respondents to abate the repeated, ongoing and continuous violation of the Milwaukee Code of Ordinances and Wisconsin State Statutes. Bird was requested to cease and desist its business operations in the City of Milwaukee on June 28, 2018 and Bird declined that request. (Attached and incorporated herein as Exhibit B is a true and correct copy of the email communications between Milwaukee Deputy City Attorney Adam Stephens and Bird Deputy General Counsel Wendy Mantell).

It appears from a recent review of media reports that Bird's rental of motorized scooters on public right of ways launched in several other cities around the nation in a similar, overnight, surprise fashion and has faced similar objections from cities nationwide. For example, in Santa Monica, California, Bird recently agreed to pay a $300,000.00 settlement for its unlawful

4

business model. (Attached and incorporated herein as Exhibit C are true and correct copies of media articles of Bird's recent attempts to offer motorized scooters for rent nationally).

On July 3, 2018, Milwaukee Police Sgt. Chad Raden observed the operation of multiple Bird motorized scooters on the streets and sidewalks in the City of Milwaukee. See, Affidavit of Police Sergeant Chad Raden, attached hereto as Exhibit D. Notably, one Bird operator told Sgt. Raden, "If you are going to ticket me, you won't be able to catch me." *Id.*

If allowed to continue, irreparable harm to the residents and visitors to the City of Milwaukee, State of Wisconsin will occur. Bird's deliberate and willful disregard for legal requirements for the registration of motor vehicles harms societal respect for the law and encourages its violation. Bird inadequately informs renters of their responsibilities to comply with other laws such as basic traffic safety and right of way, including the prohibition of operation while intoxicated. Bird also inadequately informs operators of the dangers of operating a motor scooter that can reach speeds up to 15 miles per hour, posing a risk to pedestrians and riders alike, while facetiously offering to "send" a helmet to a renter but not requiring one prior to rental.

Dated at Milwaukee, Wisconsin this 6th day of July, 2018.

GRANT F. LANGLEY
City Attorney


ADAM B. STEPHENS, Deputy City Attorney
State Bar No. 1033108


SAVEON D. GRENELL, Assistant City Attorney
State Bar No. 1101138

Attorneys for the Petitioner,
City of Milwaukee, Wisconsin

ADDRESS:
800 City Hall
200 East Wells Street
Milwaukee, WI 53202
Telephone: (414) 286-2601
Fax: (414) 286-8550
asteph@milwaukee.gov
1047-2018-1407

6

# CORRESPONDENCE MEMORANDUM

DT1175 97

Wisconsin Department of Transportation

Date:     May 31, 2005

From:     John J. Sobotik and Paul E. Nilsen, Assistants General Counsel, WisDOT

Subject:  **Motorized Scooters, Pocket Bikes and Low Speed Electric Bicycles**



EXHIBIT
bobbler
A

## I. INTRODUCTION

For the past few years, a wide variety of small, inexpensive motorized scooters have been distributed widely throughout the United States. We intend this memo to answer questions about their treatment under current Wisconsin law. This memo updates and replaces earlier memos on motorized scooters issued by this office[1].

This memo offers no opinion as to the public policy underlying the statutes applicable to motorized scooters, but only summarizes current law.

## II. WHAT IS A MOTORIZED SCOOTER?

Wisconsin statutes do not define "motorized scooter." In general, a "motorized scooter" is a vehicle that is designed to be stood or sat upon by the operator and that has two small-diameter wheels in tandem, upright t-shaped handlebars, and is powered by an internal-combustion engine or electric motor that is capable of propelling the device with or without human propulsion. Top speeds are generally 8-20 miles per hour. They can be "souped up" to run at up to 40 miles per hour.

Do not confuse motorized scooters with mopeds or "low-speed electric bicycles." Mopeds, of course, can be operated lawfully on public roads. A "moped" is usually a Type 1 motorcycle that is incapable of speeds faster than 30 miles per hour, is equipped with an automatic transmission, an engine certified by the manufacturer at not more than 50 cubic centimeters or an equivalent power unit, and a seat for the operator. Section 340.01(29m), Wis. Stats. This definition includes models such as the Honda Spree, Honda Metropolitan, Yamaha Jog and Yamaha Vino (shown below left).



**This is a "moped,"
NOT a "motorized scooter"**



**This is a "low-speed electric bicycle,"
NOT a "motorized scooter"**

In December 2002, Congress created a new category of vehicle called "Low-speed electric bicycles." (See above right) They are moped-like vehicles with a top speed of 20 m.p.h. that are equipped with functional pedals[2]. Under federal law, low-speed electric bicycles are not considered "motor vehicles" and so are not

---

[1] This memo replaces earlier memos of May 7, 2004, and November 12, 2003.

[2] The federal definition for "low-speed electric bicycle" is "a two- or three-wheeled vehicle with fully operable pedals and an electric motor of less than 750 watts (1 h.p.), whose maximum speed on a paved

required to meet federal motor vehicle safety standards promulgated by the National Highway Traffic Safety Administration. Accordingly, they will not bear a manufacturer's certificate of conformity as required by 49 CFR 567.4(g). Instead, the Consumer Product Safety Commission regulates these vehicles like bicycles. This memo does not address titling or registration issues related to "low-speed electric bicycles."

Motorized scooters, in contrast, are typically designed to be operated by a person in the standing position, though some are equipped with a bicycle-type seat. None has working pedals. Wheels can be solid rubber or pneumatic. Most are equipped with a handbrake, but lighter models may be equipped with only a footbrake. Sizes vary, up to 42 inches high, up to 18 inches wide and up to 40 inches long. Gross weights vary from 16 to 65 pounds (battery-powered models are generally heaviest). Gas engines are generally smaller than 35cc displacement and are generally 1.5 hp or less. Electric motors typically produce 600W or less output. Retail prices vary from $150-$1,000. Some models are equipped with rudimentary lights, horns, and turn signals. The vehicles are sometimes called "go-peds" or "motorized foot scooters."



**These are typical examples of motorized scooters.**

Other states have defined motorized scooters (and regulated their use) by statute, but Wisconsin statutes do not recognize them as a separate class of vehicle. (See, e.g. California Veh. Code § 407.5 (a); Maine Rev. Stat. Ann. Tit. 29, § 101(41-B); Florida Stat. ch. 316.003 (82).)[3]

---

level surface, when powered solely by such a motor while ridden by an operator who weighs 170 pounds, is less than 20 miles per hour." 15 USC 2085, as created by Public Law 107–319.

[3] California Veh. Code § 407.5 (a). "Motorized scooter" means any two-wheeled device that has handlebars, is designed to be stood or sat upon by the operator, and is powered by an electric motor that is capable of propelling the device with or without human propulsion. For purposes of this section, a motorcycle, as defined in Section 400, a motor-driven cycle, as defined in Section 405, a motorized bicycle or moped, as defined in Section 406, or a toy, as defined in Section 108550 of the Health and Safety Code, is not a motorized scooter.

Maine Rev. Stat. Ann. Tit. 29, § 101(41-B). "Motorized scooter" means a scooter that is powered by a motor having a maximum piston displacement of less than 25 cubic centimeters or an electric driven motor and is capable of a maximum speed of no more than 25 miles per hour on a flat surface. "Motorized scooter" does not include an electric personal assistive mobility device.

Florida Stat. ch. 316.003 (82). "Motorized scooter" means any vehicle not having a seat or saddle for the use of the rider, designed to travel on not more than three wheels, and not capable of propelling the vehicle at a speed greater than 30 miles per hour on level ground.

### III. MOTORIZED SCOOTERS ARE "MOTOR VEHICLES."

A motorized scooter is a "vehicle," because it is a "device in, upon, or by which any person or property is or may be transported or drawn upon a highway." Section 340.01 (74), Wis. Stats. A motorized scooter is a "motor vehicle," because it is a self-propelled vehicle that does not operate exclusively on rail. Section 340.01(35), Wis. Stats. Courts in at least two other states have found motorized scooters to be "motor vehicles" under statutes similar to Wisconsin's, and therefore found them to be subject to driver licensing and insurance requirements. State v. Riley, 698 So. 2d 374 (Fl. Dist. Ct. App. 1997); Reilley v. DMV, 240 A.D.2d 296 (N.Y. App. Div. 1997).

### IV. MOTORIZED SCOOTERS CANNOT BE REGISTERED OR TITLED.

Federal law requires that all motor vehicles sold in the United States for on-road use meet federal motor vehicle safety standards and that manufacturers certify that their vehicles meet those standards. 49 USC 30115 and 49 CFR 571.7.

> 49 USC 30115. Certification of compliance. *A manufacturer or distributor of a motor vehicle* or motor vehicle equipment *shall certify* to the distributor or dealer at delivery *that the vehicle or equipment complies with applicable motor vehicle safety standards* prescribed under this chapter. *[emphasis added]*.

> 49 USC 30102(a) (6) ``motor vehicle" means a vehicle driven or drawn by mechanical power and *manufactured primarily for use on public streets, roads, and highways*, but does not include a vehicle operated only on a rail line. *[emphasis added]*

> 49 USC 30112. *A person may not manufacture for sale, sell, offer for sale, introduce or deliver* for introduction in interstate commerce, or import into the United States, *any motor vehicle* or motor vehicle equipment manufactured on or after the date an applicable motor vehicle safety standard prescribed under this chapter takes effect *unless the vehicle or equipment complies with the standard and is covered by a certification issued under section 30115 of this title*. *[emphasis added]*

For purposes of federal motor vehicle safety standards, a motorized scooter falls within the definition of a motorcycle, a motor-driven cycle, or perhaps a passenger car under 49 CFR 571.3:

> "Motorcycle" means a motor vehicle with motive power having a seat or saddle for the use of the rider and designed to travel on not more than three wheels in contact with the ground.

> "Motor-driven cycle" means a motorcycle with a motor that produces 5-brake horsepower or less.

> "Passenger car" means a motor vehicle with motive power, except a low-speed vehicle, multipurpose passenger vehicle, motorcycle, or trailer, designed for carrying 10 persons or less. 49 CFR 571.3

Accordingly, if motorized scooters were designed for on-road use, they would be subject to federal safety standards applicable to motorcycles, motor-driven cycles or passenger cars, including headlamps, turn signals, reflectors, rear view mirrors, brake lamps and mufflers. In addition, the manufacturer would certify that the motor vehicle meets all applicable safety standards by permanently affixing a decal to the vehicle stating, among other things, "This vehicle conforms to all applicable federal motor vehicle safety standards in effect on the date of manufacture." 49 CFR 567.4 (g) (5). The fact that the manufacturer has not certified a motorized scooter as complying with federal motor vehicle safety standards indicates that the manufacturer does not intend them to be used on public roads.

Case 2:18-cv-01066-JPS Filed 07/12/18 Page 21 of 58 Document 1-1

Because motorized scooters are not designed and manufactured for on-road use, and because they lack the equipment and certification needed to comply with federal motor vehicle safety standards, they cannot be registered for use on public roads in Wisconsin:

> 341.10 Grounds for refusing registration. _The department shall refuse registration_ of a vehicle under any of the following circumstances:
>
> ...
>
> (6) The vehicle is _originally designed and manufactured for off-highway operation unless the vehicle meets the provisions of s. 114 of the national traffic and motor vehicle safety act of 1966_, as amended, except as otherwise authorized by the statutes. _[emphasis added]_

Thus, motorized scooters are another addition to the long list of vehicles that are ineligible for registration and unrestricted operation on Wisconsin public roads, such as mini-bikes, go-carts, all-terrain vehicles, snowmobiles, lawn tractors, lightweight utility vehicles (such as the John Deere Gator and the Kawasaki Mule), battery powered kiddie cars, golf carts and neighborhood electric vehicles.

## V. WHAT LAWS REGULATE USE OF MOTORIZED SCOOTERS IN WISCONSIN?

Because motorized scooters are considered "motor vehicles" under the law but are ineligible for registration, they cannot be legally operated on any public road in Wisconsin. In addition, because they are "motor vehicles," a driver's license is required to operate them on public roads, including most sidewalks along them.

### A. Valid Registration is Required to Operate a Motor Vehicle on a Highway (including most sidewalks).

Wisconsin law has long prohibited the operation of unregistered motor vehicles on public roads:

> 341.04(1) It is unlawful for any person to operate or for an owner to consent to being operated on any highway of this state any motor vehicle… unless at the time of operation the vehicle in question either is registered in this state, or… a complete application for registration… has been delivered to the department…

The statutes exempt many vehicles from registration requirements, including farm equipment and bicycles, but none of the exceptions applies to motorized scooters. Section 341.05, Wis. Stats. Because motorized scooters cannot be registered and are not exempt from registration, they cannot be ridden upon Wisconsin highways[4]. Drivers operating motorized scooters on highways can be issued a citation for violating s. 341.04(1), Wis. Stats. The penalty for operating an unregistered motor vehicle on a highway is around $150 (depending on court costs and other variables).

### B. A Drivers License is Required to Operate a Motor Vehicle on a Highway (including most sidewalks).

For over 50 years, state law has required a person who operates a motor vehicle on a public road in Wisconsin to possess a driver's license:

> 343.05(3)(a) No person may operate a motor vehicle which is not a commercial motor vehicle upon a highway in this state unless the person possesses a valid operator's license issued to the person by the department which is not revoked, suspended, canceled or expired.

A person riding a motorized scooter on a public road without a driver's license can be issued a citation for violating this statute, or a local ordinance conforming to the statute. The penalty for driving without a

---

[4] "Highway" includes all public roads and streets. See section C for a discussion of what constitutes a "highway" under Wisconsin law.

4

license is approximately $181, and earns three demerit points. This applies to motorized scooters ridden on most sidewalks (see section C. below).

## C. Regulations Typically Apply to Sidewalks.

The term "highway" means "all public ways and thoroughfares and bridges on the same. It includes the entire width between the boundary lines of every way open to the use of the public as a matter of right for the purposes of vehicular travel." Section 340.01(22), Wis. Stats. Many highways are composed of a paved travel lane in the center, called a "roadway", with the remaining right-of-way width used as an unpaved shoulder or as an improved sidewalk. Sidewalks adjoining a highway typically lie within the highway right-of-way, which makes them a part of the "highway," and subject to laws regulating motor vehicle use in the highway. In Interest of E.J.H., 112 Wis. 2d 439, 334 N.W.2d 77 (1983). Therefore, the laws regulating operation of motor vehicles on a "highway" apply on sidewalks as well as on the roadway itself.

## VI. ARE MOTORIZED SCOOTERS, "PLAY VEHICLES," UNDER WISCONSIN LAW?

### A. Motorized Scooters Might be Considered "Play Vehicles."

Under Wisconsin law, play vehicles are subject to some regulations not applicable to other vehicles. Thus, determining whether a motorized scooter is a "play vehicle" has implications regarding the manner and locations in which the vehicles may be operated.

Whether a motorized scooter is a "play vehicle" at law depends on whether it is a "toy." Section 340.01(43m), Wis. Stats., defines "play vehicle":

340.01(43m) "Play vehicle":
(a) Means a coaster, skate board, roller skates, sled, toboggan, unicycle or toy vehicle upon which a person may ride.
(b) Does not include in-line skates.

Clearly, motorized scooters are not inline skates, coasters, skateboards, roller skates, sleds, or unicycles. Are they "toy vehicles?" This is debatable, as no court has yet examined motorized scooters to make this determination.

"Toy" is not defined in the statutes. The Wisconsin Supreme Court has found a bicycle having wheels smaller than the minimum size specified in the statutory definition of "bicycle" and ridden by two girls was a "toy bicycle", and treated it as a "play vehicle". Bey v. Transport Indem. Co., 23 Wis. 2d 182 (Wis., 1964). The Wisconsin Supreme Court described a Daisy BB gun used to shoot a child's eye out as a "toy," a mere "plaything." Harris v. Cameron, 51 N.W. 437, 81 Wis. 239, 29 Am.St.Rep. 891 (1892). This is consistent with the dictionary definition of "toy," which means "any article to play with, esp. a plaything for children." Webster's New World Dictionary, 2nd Ed. In Fleury v. Wentorf, 262 N.W.2d 68, 82 Wis.2d 105(1978) the Wisconsin Supreme Court described a homemade cannon used to shoot tennis balls 100 yards (and also to shoot out a child's eye) as a "toy." The fact that items as dangerous as BB guns and tennis ball cannons are considered "toys" by the court suggests that the age of the average user of the item is more important to the court in determining whether an item is a "toy" than whether the item is inherently dangerous. Because motorized scooters are most commonly ridden by children, it follows that a court could view them as toys.

Some have suggested that the fact that none of the other vehicles listed in the definition of "play vehicle" is self-propelled may be important. They postulate that a court might exclude all self-propelled vehicles from the class of "toy vehicles" because of that distinction. In fact, however, there a many self-propelled vehicles on the market today, such as battery powered self-propelled tractors, that are clearly intended only for children and are undoubtedly "toy vehicles." So the fact that motorized scooters are self-propelled is not especially telling and cannot be said to exclude them from the "play vehicle" category. We have encountered many police agencies that do consider motorized scooters to be "play vehicles" and issue citations to riders under the statutes applicable to play vehicles. Given the fact that most people riding

these scooters are children, we concur with the opinion of the police agencies that consider that motorized scooters to be "toy vehicles."

## B. Play Vehicles May Not Be Operated on a "Roadway."

If motorized scooters are play vehicles, a person riding a motorized scooter on a public road is subject to a citation under s. 346.78, Wis. Stats., which prohibits operation of play vehicles on roadways (the paved travel lanes of a highway):

> 346.78 Play vehicles not to be used on roadway. No person riding upon any play vehicle may attach the same or himself or herself to any vehicle upon a roadway or *go upon any roadway* except while crossing a roadway at a crosswalk. *[emphasis added]*

The parent or guardian of the child can be issued a citation for permitting the child to operate the vehicle in a roadway:

> 346.77 Responsibility of parent or guardian for violation of bicycle and play vehicle regulations. No parent or guardian of any child shall authorize or knowingly permit such child to violate any of the provisions of ss. 346.78 to 346.804 and 347.489.

### VII. CAN A LOCAL MUNICIPALITY PERMIT OPERATION OF MOTORIZED SCOOTERS ON ROADS, SIDEWALKS OR BIKE PATHS?

## A. Municipal Laws Must be Consistent With State Traffic Regulations.

In general, local authorities may not adopt ordinances that are inconsistent with state traffic laws. Section 349.03(1), Wis. Stats.[5] Although the State of Wisconsin has preempted the field of traffic regulations, it nonetheless has chosen to share the field with local authorities. County of Walworth v. Rohner, 108 Wis.2d 713, 718, 324 N.W.2d 682,684 (1982); *see* City of Janesville v. Walker, 50 Wis.2d 35, 36-37, 183 N.W.2d 158, 159 (1971); Town of East Troy v. A-1 Service Co., Inc., 196 Wis.2d 120 ,537 N.W.2d 126 (Ct. App. 1995).

In Town of East Troy v. A-1 Service Co., Inc., 196 Wis.2d 120 ,537 N.W.2d 126 (Ct. App. 1995), the court of appeals summarized municipal authority to enact traffic regulations under this statute as follows:

> In s. 349.06(1)(a), Wis. Stats., under a heading entitled "Express Regulatory Powers," the legislature affirmatively delegated to municipalities the power to enact and enforce traffic regulations which are "in strict conformity with one or more provisions of chs. 341 to 348 and 350 for which the penalty for violation thereof is a forfeiture." City of Janesville v. Walker, 50 Wis.2d 35, 36-37, 183 N.W.2d 158, 159 (1971) at 159-60. Additionally, under s. 349.03(1), Wis. Stats., a local authority may "enact or enforce any traffic regulation" that either under subsec. (a) "[i]s not contrary to or inconsistent with chs. 341 to 348 and 350" or under subsec. (b) "[i]s expressly authorized by ss. 349.06 to 349.25 or some other provision of the statutes."
>
> In City of Janesville v. Garthwaite, 83 Wis.2d 866, 874-75, 266 N.W.2d 418, 423 (1978), our supreme court construed language in s. 349.03(1)(a), Wis. Stats., and held that where the local ordinance involves a matter which the legislature has not chosen to regulate, local authorities may enact ordinances that are not inconsistent with the traffic code. See also Steel v. Bach, 124 Wis.2d 250, 253, 369 N.W.2d 174, 175 (Ct. App. 1985). However, as we read the development of the case law in this area, in matters the legislature has chosen to regulate, the local ordinance must strictly comply with chs. 341

---

[5] 349.03 Regulation by local authorities forbidden; exceptions.

> (1) Chapters 341 to 348 and 350 shall be uniform in operation throughout the state. No local authority may enact or enforce any traffic regulation unless such regulation:
> (a) Is not contrary to or inconsistent with chs. 341 to 348 and 350; or
> (b) Is expressly authorized by ss. 349.06 to 349.25 or some other provision of the statutes.

to 348 and 350, Wis. Stats., *and* be expressly authorized by a statutory provision. See Garthwaite, 83 Wis.2d at 873-74, 266 N.W.2d at 422-23 (distinguishing Walker, 50 Wis.2d at 39-40, 183 N.W.2d at 160-61); City of Madison v. McManus, 44 Wis.2d 396, 401, 171 N.W.2d 426, 429(1969)); compare Walker, 50 Wis.2d at 37, 183 N.W.2d at 159-60, with ss. 349.03(1)(b) and 349.06(1), Wis. Stats.

Because the legislature regulates the use of motor vehicles in highways, under the logic of the Town of East Troy v. A-1 Service Co., Inc., Walker, and Garthwaite decisions, any local ordinance would have to be in strict conformity with state law on that issue. Therefore, a municipality may not adopt an ordinance that permits operation of motorized scooters in violation of the laws described above prohibiting unregistered or unlicensed operation of a motor vehicle on a highway, or any other provision of the traffic code.

**B. Municipalities May Permit Operation of Vehicles on Sidewalks.**

State law does permit local municipalities to permit operation of vehicles on sidewalks:

Section 346.94(1) Driving on sidewalk. The operator of a vehicle shall not drive upon any sidewalk area except at a permanent or temporarily established driveway unless permitted to do so by the local authorities.

This grant of authority does not permit municipalities to waive licensing and registration requirements applicable to operation of a motor vehicle within a highway, including upon sidewalks that are part of a highway. Such an ordinance would be inconsistent with ss. 343.05 and 341.04, Wis. Stats., and therefore impermissible under s. 349.03(1), Wis. Stats.

Thus, the scope of drivers and vehicle types municipalities may permit to operate on sidewalks is limited. Municipalities may not permit unlicensed drivers to operate motor vehicles on sidewalks within highways. Nor may municipalities permit unregistered motor vehicles to operate on sidewalks. Because all motorized scooters are unregistered motor vehicles, a municipality may not permit their operation on sidewalks that lie within highways. Municipalities may permit all types of unmotorized motor vehicles on sidewalks by ordinance, such as kiddie cars, coaster wagons, coasters, skateboards and bikes.

**C. Municipalities May NOT Permit Operation of Motor Vehicles on Bicycle Ways.**

Section 349.23, Wis. Stats., generally permits local authorities to establish bicycle ways and to designate what types of vehicles may operate on the bicycle way so long as the use is not inconsistent with bicycle safety. That authority is subject, however, to the general requirement that any municipal traffic ordinance not conflict with the traffic code. s. 349.03(1), Wis. Stats. In the case of bicycle ways, s. 346.94(12) explicitly prohibits motor vehicle operation. This prohibition extends to motorized scooters, which are motor vehicles:

346.94(12) Driving on bicycle lane or bicycle way. No operator of a motor vehicle may drive upon a bicycle lane or bicycle way except to enter a driveway, to merge into a bicycle lane before turning at an intersection, or to enter or leave a parking space located adjacent to the bicycle lane or bicycle way. Persons operating a motor vehicle upon a bicycle lane or bicycle way shall yield the right-of-way to all bicycles and electric personal assistive mobility devices within the bicycle lane or bicycle way.

## VIII. WHERE CAN MOTORIZED SCOOTERS BE RIDDEN LEGALLY?

Motorized scooters, of course, can be operated with permission on private property, and on private roads and driveways:

340.01(46) "Private road or driveway" is every way or place in private ownership and used for vehicular travel only by the owner and those having express or implied permission from the owner and every road or driveway upon the grounds of public institutions other

> than public schools, as defined in s. 115.01 (1), and institutions under the jurisdiction of
> the county board of supervisors.

In addition, motorized scooters may be operated on sidewalks that are neither bicycle ways nor highways within any municipality that has enacted an ordinance authorizing their use on sidewalks. They can, of course, be ridden in backyards, fields, and other off-road locations on private property.

Although roads on state university grounds (where motorized scooters are increasingly common) are considered private roads and driveways and are not technically "highways," under state law, the University of Wisconsin System has adopted the state statutes into their internal traffic code, so many of the restrictions discussed in this memo do apply to roads lying within state university grounds. Henkel v. Phillips, 82 Wis.2d 27 (1978). Section UWS 18.04, Wis. Admin Code.

## IX. POCKET BIKES AND MINI-CHOPPERS

A "pocket bike" is a mini-motorcycle, usually about eighteen inches high, typically gas or electric powered, with a top speed ranging from thirty-five to forty-five miles per hour. Mini-choppers are pocket bikes that resemble choppers, or customized motorcycles. Pocket bikes are considered "motorcycles" under federal law and so must meet federal safety standards applicable to motorcycles if they are intended for use on highways. However, they do not meet those federal motor vehicle safety standards because, among other deficiencies, their small size puts the headlamp below the minimum 22" height. 49 CFR 571.108, table IV. Manufacturers cannot and do not certify that pocket bikes meet applicable federal safety standards. Therefore, pocket bikes cannot be registered under Wisconsin law and so cannot be operated lawfully on public roads in this state. All the prohibitions applicable to motorized scooters apply to these vehicles.



**These are "pocket bikes," NOT "motorized scooters"**

Moreover, under Wisconsin law, pocket bikes that can exceed 30 miles per hour fall into the statutory definition of "motorcycle" set forth in section 340.01(32), Wisconsin Statutes. Therefore, a person operating a pocket bike on a highway is also required to hold a motorcycle (Class M) license. A driver who possesses only a Class D, or regular, license (or who possesses no license) can be issued a citation for operating a motorcycle without a license. The penalty for riding a motorcycle without a Class M license is a forfeiture of about $180, and results in the assessment of three demerit points.

Similarly, because a pocket bike is a "motorcycle" under state law, a person under age 18 is required to wear a helmet if operating or riding on a pocket bike on a highway. Section 347.485, Wisconsin Statutes.

## X. WHAT IS A PARENT'S LIABILITY?

A juvenile aged 16 or over is treated as an adult for traffic offenses. For younger offenders, however, a court can require a parent or guardian to appear personally at court hearings involving a traffic citation issued to a child under 16. Sections 938.17(2) and 938.27(1), Wis. Stats. Parents and guardians can also

8

be required to pay forfeitures imposed for a child's traffic violations, including operating a motor vehicle with a driver's license or operating an unregistered motor vehicle, and for other post-adjudication services. Sections 938.275(1) and 938.45(1r), Wis. Stats. A parent or other adult who has sponsored a child aged 16-18 in obtaining driver's license can be held liable for any damages or injury caused by the child's negligent or willful misconduct operating a motor vehicle, including vehicles that cannot be registered or legally operated on a highway, such as motorized scooters and pocket bikes. Section 343.15, Wis. Stats.

Any person who lends a pocket bike to another must insure that the rider has required eyewear and, if the rider is under 18 years, a helmet. Section 347.485(3), Wis. Stats. As discussed above, parents can be issued citations for permitting their children to operate play vehicles on a roadway. Section 346.77, Wis. Stats. Finally regardless of responsibility for violations of the traffic laws committed by their children, parents should be especially concerned about potential civil liability for physical injuries resulting from crashes involving these vehicles. Whether accidents occur on or off a highway, the potential for injury and resulting litigation exist.

## XI. PENDING LEGISLATION

There is currently legislation pending in the Wisconsin Legislature that would make low-speed electric bicycles legal for on-roadway use in Wisconsin. 2005 Assembly Bill 95. As discussed above, federal law will permit sales of these vehicles for on-highway use provided they meet the safety standards required for bicycles. Under the bill, a regular driver's license will be required to operate a low-speed electric bicycle. To date, no similar legislation is proposed for motorized scooters or pocket bikes.

## XII. CONCLUSION

Motorized scooters, pocket bikes, and similar motorized vehicles are "motor vehicles" and are subject to driver licensing and vehicle registration requirements. Motorized scooters and pocket bikes do not meet federal safety standards and are designed for off-road use. State law accordingly largely restricts their use to private property and to "private roads and driveways." The University of Wisconsin System has prohibited their use on private roads and driveways under its jurisdiction. Local authorities can adopt ordinances permitting their operation on some sidewalks, but may not permit their operation on bicycle ways, their unregistered operation within a highway, or their operation by unlicensed drivers. Parents can be held responsible if their children violate any of the legal restrictions applicable to these vehicles.

Like ATV, snowmobile, golf cart, and a host of other off-highway vehicle owners, motorized scooter and pocket bike owners are best advised to operate these vehicles on private property and not on public roads.

| | |
|---|---|
| **From:** | Wendy Mantell <wendy@bird.co> |
| **Sent:** | Thursday, June 28, 2018 4:03 PM |
| **To:** | Stephens, Adam |
| **Subject:** | Fwd: Cease and Desist Request regarding the Unlawful Use of BIRD Electric Vehicle Sharing in Milwaukee, Wisconsin |

Mr. Stephens,

Bird Rides Inc. ("Bird") is in receipt of your email below, dated June 28, 2018 requesting removal of our electric scooters from the city of Milwaukee. We respectfully disagree with the city's contention that operation of any electric scooter in the state of Wisconsin is unlawful, and we believe state vehicle code interpretation would be facilitated by interaction with the state department of transportation.

Wisconsin statutes have not defined electric scooters as a class of vehicle, and state law has not regulated their use. It is clear that our scooters are designed for on-street use, just like bicycles and other mobility devices that are exempted from federal motor vehicle standards, and they should be regulated accordingly. Our scooters are now operated on roadways in many cities across the United States as an affordable last mile transportation option. Bird scooters are helping cities meet their ambitious goals of reducing carbon emissions and addressing the ever present car traffic crisis.

We look forward to working with the city to create and enforce common sense rules encouraging the safe use of our sustainable transportation option that the people of Milwaukee have begun to adopt enthusiastically.

**1) Wisconsin and Milwaukee law do not explicitly define or prohibit electric scooter operation**

"Motorized scooter" or "electric scooter" are not defined in Wisconsin Statutes. Similarly, the Milwaukee Code of Ordinances Public Passenger Vehicle Regulations and Traffic Code does not define them. Consequently, their operation and use is not expressly prohibited by state law or any Milwaukee ordinance.

**2) Wisconsin and Milwaukee law do not require vehicles to be "designed for on-street use" to be (a) operated on roadways and sidewalks, and (b) registered.**

No Wisconsin or Milwaukee statute contains language that requires vehicles to be "designed for on-street use." (See Wis. Stat. Sec. 340.01(75), (35), (43m); Milwaukee Code of Ord. Sec. 100-03(12)). All of the definitions cited contemplate these vehicles will be operated on public roadways.

There are many types of vehicles that are exempted from registration requirements under Wisconsin law, including those such as motor bicycles and bicycles that are most akin to our motorized scooters. Those vehicles also do not meet federal motor vehicle standards and are exempted from the requirements because they do not fall within the definition of a federal motor vehicle. These vehicles include:

Farm tractors
Forklifts
Implement of husbandry
Bicycle
Motor bicycle
Golf cart



Wood harvesting slasher

The above vehicles are all allowed on public roadways without being "designed for on-street use" as the City is viewing that designation. It would be difficult to reconcile allowing the operation of a forklift or wood harvesting slasher on public roadways, but not allow a Milwaukee resident to ride an electric scooter in a bike lane to avoid adding one more car to the road.

## 3)    Bird and the City Should Work Together To Create Regulations For Electric Scooters

While there is no current applicable law for motorized scooters, Bird scooters could be classified similar to "motor bicycles" under Wisconsin or Milwaukee law.

Wisconsin Statutes defines a motor bicycle as a "2-wheeled or 3-wheeled vehicle that has fully operative pedals for propulsion by human power and an electric motor of less than 750 watts and that is capable, when powered solely by the motor, of a maximum speed of less than 20 miles per hour with a 170-pound rider on a dry, level, hard surface with no wind." 340.01(30).

The only difference between motorized scooters operated by Bird riders and motor bicycles is that motorized scooters do not have "fully operative pedals." There is no public safety or policy purpose to requiring vehicles that move this speed to have pedals in order to be exempt from registration requirements. Indeed, the Wisconsin legislature clearly understood that those requirements are unnecessary for vehicles of this type. Bird scooters should be classified accordingly.

## 4)    The City Should Not Cite Riders Prematurely

Because there is no controlling law in Milwaukee that regulates motorized scooters, the City should not cite riders prematurely. Bird understands that the City's statutory schemes may not currently be well-suited to regulate Bird's sustainable, last-mile transportation. Bird has proposed an Interim Operating Agreement with the City to address the City's concerns, and agrees with the City that a proper legislative process should be the next step. We look forward to working with the City to achieve our mission, providing affordable, environmentally friendly transportation to the people of the City of Milwaukee.

Sincerely,

**BIRD**

Wendy Mantell
Deputy General Counsel
Bird.co

---------- Forwarded message ----------
From: **Stephens, Adam** <asteph@milwaukee.gov>
Date: Thu, Jun 28, 2018 at 12:27 PM
Subject: Cease and Desist Request regarding the Unlawful Use of BIRD Electric Vehicle Sharing in Milwaukee, Wisconsin
To: "hello@bird.co" <hello@bird.co>, "press@bird.co" <press@bird.co>

Case 2:18-cv-01066-JPS   Filed 07/12/18   Page 29 of 58   Document 1-1

Please be advised that BIRD's Motorized Scooters may NOT be lawfully operated on any public street or sidewalk in the City of Milwaukee, Wisconsin. Whether defined as a vehicle (Wis. Stat. Sec. 340.01(74)), motor vehicle (Wis. Stat. Sec. 340.01(35)) or a play vehicle (Wis. Stat. Sec. 340.01(43m)), under no circumstances may motorized scooters operate on a public street because they are not designed for on-street use. If motorized scooters were designed for on-street use, they would be subject to federal safety standards and manufacturer certification. Further, regulations pertaining to operation of motor vehicles apply equally on sidewalks and streets as both are part of the public highway right-of-way. BIRD's website and notice placard on the scooter informs operators that they must not use the vehicle on a sidewalk and should use the vehicle on the roadway or bicycle lane. See, https://www.bird.co/blog/bird-launches-safety-campaign-in-santa-monica (Last visited 06/27/2018) "Ride in bike lanes. Please ride on the street close to the right curb and don't ride on sidewalks." This statement is thus encouraging the violation of Wisconsin vehicle and traffic law.

Any operator of a BIRD motor scooter on a city street or sidewalk is subject to a $98.80 citation for Operating an Unregistered Motor Vehicle upon a Highway contrary to Wis. Stat. Sec. 341.04(1). Based on circumstances, there may be other traffic law violations committed by the operator (such as OWI). Be advised that your company is aiding and abetting the violation of state and local law and may be subject to citation and/or injunctive relief.

Given the emergent nature of this situation and the distinct likelihood these vehicles may be operated by individuals on city streets after consuming alcoholic beverages and/or engaging in risky driving on what they perceive as a simple toy, BIRD should immediately remove all of the motorized scooters held out for rent on City of Milwaukee sidewalks and streets. Please forward this email to BIRD's management and General Counsel.

Thank you,

ADAM B. STEPHENS, DEPUTY CITY ATTORNEY

OFFICE OF THE CITY ATTORNEY

CITY HALL 800, 200 EAST WELLS STREET

MILWAUKEE, WISCONSIN 53202

ASTEPHEN@MILWAUKEE.GOV

414-286-2689

The City of Milwaukee is subject to Wisconsin Statutes related to public records. Unless otherwise exempted from the public records law, senders and receivers of City of Milwaukee e-mail should presume that e-mail is subject to release upon request, and is subject to state records retention requirements. See City of Milwaukee full e-mail disclaimer at www.milwaukee.gov/email_disclaimer

You received this message because you are subscribed to the Google Groups "Bird" group.
To unsubscribe from this group and stop receiving emails from it, send an email to
bird+unsubscribe@crosscutstrategies.com.
To post to this group, send email to bird@crosscutstrategies.com.
To view this discussion on the web visit
https://groups.google.com/a/crosscutstrategies.com/d/msgid/bird/MW2PR0901MB24909A62FDA285C5A31C
EBB6D14F0%40MW2PR0901MB2490.namprd09.prod.outlook.com

--

Nicholas Samonas
Senior Associate
Crosscut Strategies LLC
(603) 988-6671

# Bird Rides, Inc. takes plea deal and will pay $300,000

smdp.com/bird-rides-inc-takes-plea-deal-and-will-pay-300000/164437

editor

February 14, 2018



The City Attorney's office released the following statement today:

On February 14, 2018, Santa Monica City Attorney's Office prosecutors entered a plea agreement with Bird Rides, Inc. and Travis VanderZanden (collectively "Bird"), whereby Bird will accept responsibility for violating local law and pay significant penalties. Upon a referral from the City's Code Enforcement Division, prosecutors filed a criminal complaint against the motorized scooter company and its president on December 6, 2017. Both were charged with multiple counts of violating local law by operating a commercial scooter rental business on the public right of way without a proper City business license and failing to comply with City administrative citations.

As part of the plea agreement, Bird agreed to:

Secure proper City business licenses and work with the City's Business License Division to ensure compliance with local business licensing regulations.

Pay previously issued Administrative Citation fines totaling $6,115.63.

Pay additional fines and investigative costs totaling $300,000.

Run a weeklong public safety education campaign on the Big Blue Bus.

Accept responsibility for Bird's prior conduct, plead "No Contest" to an infraction and pay additional criminal fines of $200 plus statutory penalty assessments.

EXHIBIT

tabbies*

C

"With this agreement, Bird and VanderZanden acknowledge that they failed to comply with the City of Santa Monica's business licensing requirements which are designed to protect the safety of the public," said Deputy City Attorney Eda Suh. "Bringing this new business into compliance with local law achieves a fair and positive outcome for the people of Santa Monica."

The plea agreement must still be approved by the California Superior Court before it becomes effective. Prosecutors and Bird will return to court on February 26th to seek Court approval of this plea agreement.

In this case, the City will devote a significant portion of the fines it will collect to a broader public safety campaign for Vision Zero, the City Council's goal of eliminating deaths and significant injuries from traffic collisions.

The City of Santa Monica continues to work with Bird Rides to address safety concerns posed by unsafe operation of motorized scooters. The California Vehicle Code prohibits them from being operated on sidewalks or on the beach bike path and riders must have a valid driver's license and wear a helmet, with only one person to a device. The Santa Monica Police Department has worked to educate riders on these requirements and is now citing motorized scooter riders for State Law violations.

Bird has also recently reduced the top speed of their scooters from 22 to 15 miles per hour; instituted a free helmet service for users; marked their vehicles with key safety rules; more clearly spelled out safety rules on their App; and improved their App security to help ensure that only those with a valid driver's license can register to ride a scooter.

Marcus Reese, Bird spokesman, released the following statement:

"We are pleased that Bird and the City of Santa Monica were able to work out our differences regarding licensure. Under the agreement, the city agreed to dismiss the nine original misdemeanor counts, and the company agreed to plead no contest to a single infraction of the city's municipal code. Bird now starts fresh with the city, and we look forward to continuing to provide a safe, environmentally friendly transportation solution to the people of Santa Monica."

≡ MENU

# A flock of electric scooters suddenly descended on Austin. Now the city is scrambling to regulate them.

Two electric scooter operators — Bird Rides and LimeBike — launched in Austin before the city could roll out a permitting process. The scooters vanished from city streets after the city council cracked down on the companies.

BY **CLAIRE ALLBRIGHT**    MAY 1, 2018    12 AM

| f | 🐦 | ✉ | 💬 |
|---|---|---|---|



Motorized scooter on the UT-Austin campus on April 25, 2018. 📷 Shelby Knowles for The Texas Tribune

Seemingly overnight, Austin was buzzing with electric scooters last month. Scooter riders weaved through crowded sidewalks and traffic downtown and zoomed out of

drivers' blind spots near the University of Texas campus, catching motorists and pedestrians alike off guard.

Bird Rides, a dockless scooter company, deployed a fleet of thin, black scooters in April that quickly grew to almost 700. Then came LimeBike, which flooded the streets with their own white and green Lime-S scooter models on April 16.

Then, just as quickly, they disappeared last weekend.

The appearance of rentable scooters across the city briefly threw Austin's political leaders into a frenzy as city government officials rushed to roll out a plan to regulate the businesses, which had started operating before a city-led pilot program could begin.

The Texas Tribune thanks its sponsors. Become one.



"In order to forestall a predictable and unmanageable swamping of our streets with thousands of vehicles, ATD recommends a more nimble response than our previously expressed pilot timeframe," Robert Spillar, director of the Austin Transportation Department, said in a letter to the mayor and Austin City Council members.

The council worked until after 2 a.m. Friday to change city code and prohibit leaving dockless scooters or bicycles on city sidewalks and streets until a permitting process begins. Violators can have their scooters impounded and face a $200 fine for each seized scooter.

Over the weekend, both California-based companies pulled their vehicles from Austin city streets — but not before the city's transportation department impounded about 70 of them.

"We expect Birds in Austin to be back on the streets within a few days," company spokesperson Kenneth Baer said. "From the beginning we have respected the rule of law and we will not operate outside the boundaries of the ordinance just passed."

Mary Caroline Pruitt, LimeBike's communications manager, said the company applauds the city for setting up a permitting process and hopes to deploy a range of vehicles to Austin streets shortly. Along with scooters, it wants to rent both regular and electric-assisted bicycles.

"We express our sincerest apologies to our riders for the inconvenience and look forward to deploying a multi-modal fleet later this week," Pruitt said in a written statement.

The Texas Tribune thanks its sponsors. Become one.



ARE YOUR PROPERTY TAXES TOO HIGH?
Take action at **HiddenPropertyTax.com**

Both companies placed their scooters on sidewalks and street corners throughout the city. Customers could download a smartphone app that allowed them to see the vehicles' locations in real time, unlock them and pay the rental fee. Both Bird and Lime-S charge a base fee of one dollar, then 15 cents per minute of use.

Austin initially planned to begin a pilot program for what it calls "dockless mobility" — meaning vehicles that aren't kept in racks or docking stations — starting May 1, but Bird and LimeBike deployed their scooters before it went into effect.

So the city pivoted to the new permitting process, which will require a $30 fee for each vehicle and cap the initial number of vehicles per licensed operator at 500. The city plans to roll out the new process shortly.

And not a minute too soon: The Austin Transportation Department said it's coordinating with 15 different dockless mobility companies that have expressed interest in coming to Austin.

GOAT, an Austin-based dockless scooter company, said it was penalized for waiting for Austin to deploy its pilot program.

"We left the market wide open because we trusted the process and we trusted you guys," said company owner Michael Schramm. "Please consider the damage done to local companies who have patiently waited, who have patiently been working with the city to enter the market at the right time, in the right way."

David Estrada, Bird's chief legal officer, said the company is most worried about having to scale back the number of scooters it has on Austin streets. In order for the company to have 500 scooters available at any given time, Estrada said it would have to have many more in circulation because of the charging process, which requires a network of people who are paid to collect and recharge the scooters when their batteries run low.

Estrada said the company chose Austin for expansion because it's a leading tech city and because of its well-documented traffic congestion. He said Bird is trying to help solve

what it calls the "last-mile problem" — how people can get from a bus or commuter train to their final destination when it's too far to walk.

 

"The only way that we can solve this problem is if we have enough of this alternative public transportation on the road," Estrada said. "This is the most promising solution we've seen, and if cities really want to solve traffic they need to embrace this type of solution. If we overly restrict it ... we are choosing more cars. We need to choose less cars."

Frank Westmoreland, a freshman at the University of Texas at Austin, said he loved being able to take the scooters to and from his classes.

While the scooters have been criticized for littering city streets, Westmoreland said since they were first deployed he hasn't noticed them being much of a problem.

"I think the university is taking good steps to encourage students to park them near bike racks," Westmoreland said.

Past Austin ordinances regulating companies in the sharing economy have come under fire by the Texas Legislature. In 2016, Austin attempted to mandate transportation network companies, such as Uber and Lyft, comply with stricter background check requirements, only to see lawmakers overrule those requirements — part of a series of local control battles between the city and the state.

Jen Samp, a spokeswoman for the city's transportation department, said Austin is focusing on improving safety, not on another potential battle with the Legislature.

The situation in Austin echoes a debate over bike sharing companies that has been playing out in Dallas for months, after several companies entered the North Texas market last year with bikes that can be rented — and dropped off — just about anywhere.

That led to complaints from residents that the bikes were blocking sidewalks — and in some cases being flung into front yards, trees and even in the Trinity River. City officials have told the companies to keep better track of their fleets, but the city council last month balked at the idea of charging fees that they feared could chase the companies out of the city.

*Brandon Formby contributed to this story.*

*Disclosure: The University of Texas at Austin has been a financial supporter of The Texas Tribune, a nonprofit, nonpartisan news organization that is funded in part by donations from members, foundations and corporate sponsors. Financial supporters play no role in the Tribune's journalism. Find a complete list of them here.*

**Read related Tribune coverage:**

- Texas AG Ken Paxton revs up fight against Austin's paid sick leave rule

- The next local control fight? Like Uber before, city regulations for AirBnB and HomeAway are in the crosshairs

## Quality journalism doesn't come free

Perhaps it goes without saying — but producing quality journalism isn't cheap. At a time when newsroom resources and revenue across the country are declining, The Texas Tribune remains committed to sustaining our mission: creating a more engaged and informed Texas with every story we cover, every event we convene and every newsletter we send. As a nonprofit newsroom, we rely on members to help keep our stories free and our events open to the public. Do you value our journalism? Show us with your support.

**YES, I'LL DONATE TODAY**

Let Texans decide at the local level what's best for their communities 1,156 unique Texas cities

 



(htt

# Lime and Bird haven't hit the brakes yet, despite Denver's order to remove scooters. What's next? (https://denverite.com)

The two-wheel debate of 2018 is only beginning.

Andrew Kenney
Jun 05 2018 · 12:13 p.m.

Last week, two companies deployed fleets of electric rental scooters that quickly spread through Denver's streets. Suddenly, people were cruising down sidewalks and streets on the two-wheelers and parking them just about everywhere.

Call it a case of "disrupt first, ask questions later."

Well, now the city of Denver is asking questions. On Friday, the local public works department ordered Lime and Bird to get their "dockless" scooters out of Denver's public spaces. Officials said they were concerned about the "use, placement and quantity of scooters."

But the two-wheel debate of 2018 is only beginning, and the city has indicated that it may create rules that allow the scooters to operate here.

## Four days later, the city is still full of scooters.



Scooters available via Lime and Bird as of about 9 a.m. on June 5, 2018. (Screenshots)

While Lime has received the most attention, it appeared that Bird had many more active scooters. And it appears that neither company is in compliance with the city's orders.

"I don't believe anyone in Denver Public Works has heard from Lime since we gave them notice last Friday," wrote Nancy Kuhn, spokesperson for DPW, in an email to Denverite on Monday. Failure to comply could result in citations and fees, she said.

The city's crews are already removing some unattended scooters. In fact, a number of Lime scooters have passed through a city building, according to GPS data in the Lime app. But the city is only picking them up "to the extent its resources allow."

A representative from Lime did not answer questions about whether the company would remove the scooters itself. Spokesperson Mary Caroline Pruitt said that the company had "reached out" to the city about the "notification of confiscation of our scooters."

The company wants "to better understand the reasoning behind taking them off the streets" and is searching for ways to "effectively and efficiently partner on next steps," she wrote.

Meanwhile, the city also could take action against riders. The city's laws only allow the scooters to operate on the sidewalks, and not on bike lanes and trails or in parks. Lime's scooters cap out at about 15 mph.

## It's not over for scooters.

The city is working now to create rules for dockless transportation companies, Kuhn said. They could be introduced in a matter of weeks or months, potentially giving operators a legal way to keep their scooters in the city's public spaces.

## What are the pros and cons?

Plenty of people have complaints. Maybe you've tripped over one, or seen one abandoned in a creek (https://imgur.com/EKcpBPf). Maybe you've been surprised by some kid swinging around the sidewalk corner of 11th and Bannock. (Me. I was scared.) In China, companies got so overambitious that cities were left with enormous piles of unused bikes (https://www.theatlantic.com/photo/2018/03/bike-share-oversupply-in-china-huge-piles-of-abandoned-and-broken-bicycles/556268/).

But plenty of others — maybe even a majority of the dozens of online comments I reviewed — showed that people were interested and excited about the new idea.

"People can be frightened of things until they see it's there, and how they can integrate it in their lives," said Councilwoman Mary Beth Susman, who focuses on mobility.

By the way: They're called dockless because they don't have to charge at docks. Instead, the vehicles are charged by people paid by the companies. They're unlocked with mobile apps.

The answer might be to create better places for people to store and ride these small vehicles, Susman said. "Will it take us building stands or some sort of thing, or requiring them to place them in corrals?" she asked.

The companies themselves also say they're open to suggestions. For example, Bird has introduced a feature in some cities that asks users to submit a photo of where they left the scooter, hoping to encourage better behavior.

For some mobility advocates, the whole thing points to the need for streets that are friendlier to bikes and other things that aren't cars — so people don't have to ride on the sidewalks. (Wired makes an interesting case (https://www.wired.com/story/san-francisco-scooter-ban/) for this.)

"We've taken up so much space for cars that we have neglected spaces for people," Susman said. "Now is the time that shows how much more space we need for people."

## Other cities are dealing with similar scooter struggles.

In San Francisco, the city just ordered the dockless companies to temporarily cease operations and apply for permits, according to the San Francisco Chronicle (https://www.sfchronicle.com/business/article/Bye-bye-SF-scooters-as-Bird-Lime-and-Spin-go-on-12966874.php). In response, the companies have put the vehicles in storage.

San Francisco wants the companies to keep the scooters from being parked on the sidewalks, and it will cap the number of scooters that are allowed in the city, the Chronicle reported. They're also asking the companies to provide insurance coverage and offer access to low-income riders.

Los Angeles (http://www.latimes.com/local/lanow/la-me-ln-scooters-bike-share-20180523-story.html) also is debating potential new rules, and Austin has (https://www.mystatesman.com/news/transportation/austin-rental-bike-scooter-rules-debut-mixed-reaction-companies/MDWq0CqQGbGRhUtM6pS4eN/) a new program to manage bikes and scooters.

Meanwhile, investors see major potential. Bird has reportedly raised $150 million and is valued at $1 billion (https://techcrunch.com/2018/05/29/bird-150-million-1-billion-valuation/). And this might foreshadow even more debates about the use of Denver's streets. Driverless delivery bots, anybody?



*Denverite is a __Spirited Newsroom (https://spiritedmedia.com/)__*
Copyright © 2018 Spirited Media

https://denverite.com/2018/06/05/lime-bird-still-havent-taken-scooters-off-denver-streets/    7/5/2018

Fun & Games (http://games.wtop.com/?arkpromo=site_hamburger)
Lottery Results (https://wtop.com/lotteries/)
Contests (https://wtop.com/contests/)

Listen Live (https://wtop.com/listen-live/)
Podcasts (https://wtop.com/podcast-dc/)

# Bird scooters show up in Arlington — without county's blessing

 **By Jeff Clabaugh (https://wtop.com/author/jeff-clabaugh/) | @wtopclabaugh
(https://twitter.com/wtopclabaugh)
June 26, 2018 2:59 pm**



Bird said its scooters are available throughout Courthouse, Clarendon, Ballston, Columbia
Pike and Crystal City. (Courtesy Bird)

WASHINGTON — Bird, one of several dockless bike and scooter companies taking part in D.C.'s ongoing dockless pilot program (https://wtop.com/dc/2018/04/dc-extends-dockless-bike-pilot-program/), has deployed a fleet of scooters across the river in Arlington County, Virginia, but through no official arrangement with the county.

Bird said its scooters are available throughout Courthouse, Clarendon, Ballston, Columbia Pike and Crystal City. It will expand its Arlington fleet as ridership grows, the company added.

Though Arlington County may at some point consider an experiment with dockless bikes and/or scooters as a commuting option, it is nowhere near a decision, and Bird may find itself being run out of the county.

County transportation spokesman Eric Balliet told WTOP, "Commuter Services Bureau Chief Jim Larsen is coordinating the evaluation of dockless vehicles and expects to present a draft policy to our transportation director and the county manager in September for their consideration."

"We will be having discussions with the county manager and the county attorney's office on how to respond to Bird's deployment in Arlington," he said.

When asked by WTOP if Bird had an arrangement with Arlington County for its scooters, a spokesman for the company did not immediately provide an answer.

Bird, and fellow dockless operators Lime and Spin, were temporarily put out of business in San Francisco for setting up operations without permits. The San Francisco Chronicle reported (https://www.sfchronicle.com/business/article/Bye-bye-SF-scooters-as-Bird-Lime-and-Spin-go-on-12966874.php) earlier this month the city mandated all three companies cease operations while they apply for permits.

The Chronicle said the city also impounded improperly parked scooters. Several companies have applied for permits now, with San Francisco expected to issue permits to a handful of them by the end of June.

*Like WTOP on Facebook (https://www.facebook.com/wtopnews) and follow @WTOP (https://twitter.com/WTOP) on Twitter to engage in conversation about this article and others.*

© 2018 WTOP. All Rights Reserved. This website is not intended for users located within the

European Economic Area.

# More from WTOP

//i.isrdn.com/i/1.gif?
iCUNvcnBvcmF0ZQIuZQIpdglzZAlpdglzZAl3dG9wLmNvbQIuZglpdglxcAk1MAlxdAkyNTAwCXBuCTM1NjEJdm4JNTc3ODA2CWUJY2sJYQkzODgJbwk&fwd=http%3A%2F%2Fdistroscale.com)

DC
police
investiga
body
found
in
Potomac
River

A boater
called the

‹ Previous
Next ›

Copyright © 2018 by WTOP. All rights reserved. This website is not intended for users located within the European Economic Area.

- Feedback (https://wtop.com/feedback/)
- Privacy Policy (http://corporate.hubbardradio.com/privacy-policy/)
- Terms of Use (http://corporate.hubbardradio.com/terms-of-use/)
- Copyright (https://wtop.com/copyright/)
- EEO (https://wtop.com/wp-content/uploads/6_1_2018Wash-DC-Market.pdf)
- Hubbard Radio (http://corporate.hubbardradio.com/)
- FCC Public Inspection File (https://wtop.com/wtop-103-5-fm-wwwt-107-7-fm-wtlp-103-9-fm-wwfd-820-am-online-fcc-public-inspection-files/)

STATE OF WISCONSIN      CIRCUIT COURT      MILWAUKEE COUNTY

**CITY OF MILWAUKEE**
200 East Wells Street
Milwaukee, WI 53202,

        Plaintiff,

                               Case No.

v.

                               Case Code: 30704
                               Other Injunction or Restraining Order

**BIRD RIDES, INC.**
406 Broadway #369
Santa Monica, CA 90401,

and

**TRAVIS VANDERZANDEN**
7606 Road to Singapore
San Diego, CA 92127,

        Defendants.

---

## AFFIDAVIT OF POLICE SERGEANT CHAD RADEN

---

STATE OF WISCONSIN .       )
                            ) ss.
COUNTY OF MILWAUKEE       )

I, Chad Raden, being first duly sworn on oath, depose and say:

1.     I make this affidavit based on personal knowledge and in support of the City of Milwaukee's Motion for Temporary Injunction.

2.     I am a state certified law enforcement officer currently employed as a Sergeant in the Milwaukee Police Department.

3.     I am assigned to lead the License Investigation Unit of the Milwaukee Police Department where we investigate possible violations of City of Milwaukee ordinances and Wisconsin state law related to licensed activity in the City. In this capacity, I issue citations,

EXHIBIT

tabbies®

**D**

conduct investigations, coordinate with State agencies, refer matters to the City Attorney's Office for legal action and report to the City of Milwaukee Common Council Licenses Committee on licensed activity.

4.      In late June, 2018, I became aware of Bird motorized scooters for rent within the City of Milwaukee. I fielded questions as to the legality of operating these motorized scooters in the right of way and whether Bird had obtained the proper City license. I am aware of no law that authorizes the motorized scooters to be used on City streets or to be licensed through the City. The City Attorney's Office also provided information as to the illegality of operating Bird motorized scooters in the right of way.

5.      I continue to observe Bird scooters being operated on City streets and sidewalks and abandoned on public and private property throughout the City.

6.      On July 3, 2018, at the intersection of North Water Street and East St. Paul Avenue, I observed one black motorized scooter with the Bird company logo affixed to the front of the scooter being operated in the street and on the sidewalk at 11:03 a.m. Attached and incorporated herein as Exhibit D-1 is a true and correct photograph of the motorized scooter that I took on July 3, 2018.

7.      On July 3, 2018, on East Wisconsin Avenue at North Milwaukee Street, I observed one black motorized scooter with the Bird company logo affixed to the front of the scooter being operated on the sidewalk at 1:00 p.m. The individual made several circular patterns at the corner then traveled south bound on North Milwaukee Street using the sidewalk. Attached and incorporated herein as Exhibit D-2 is a true and correct photograph of the motorized scooter that I took on July 3, 2018.

8.     On July 3, 2018, at the 600 block of North Milwaukee Street, I observed one black motorized scooter with the Bird company logo affixed to the front of the scooter being operated on the sidewalk at 1:05 p.m. Attached and incorporated herein as Exhibit D-3 is a true and correct photograph of the motorized scooter that I took on July 3, 2018.

9.     On July 3, 2018, on East St. Paul Avenue at North Milwaukee Street, I observed one black motorized scooter with the Bird company logo affixed to the front of the scooter being operated in the street and on the sidewalk at 1:33 p.m. Attached and incorporated herein as Exhibit D-4 is a true and correct photograph of the motorized scooter that I took on July 3, 2018.

10.     On July 3, 2018, on East Buffalo Street at North Milwaukee Street, I observed two black motorized scooters with the Bird company logo affixed to the front of the scooter being operated in the street and on the sidewalk at 1:37 p.m. Approximately 4 minutes later, while outside of my squad car, I observed the same male subject traveling eastbound on East Buffalo Street with a female who was also operating a Bird Scooter. The female was wearing a white dress with black designs. As the subject approached my location he slowed down. The subject then stated to me "If you are going to ticket me, you won't be able to catch me." He then proceeded eastbound on Buffalo street with the female subject. Attached and incorporated herein as Exhibit D-5 is a true and correct photograph of the motorized scooters that I took on July 3, 2018.

Dated this 6th day of July, 2018



Sgt. Chad Raden

Subscribed and sworn to before me
this 6th day of July, 2018.

Patricia Schmidt

Notary Public, State of Wisconsin
My Commission  9/21/2018

1047-2018-1407: 311241



EXHIBIT
D-1







EXHIBIT
D-2



EXHIBIT

tubbies'

D-3



EXHIBIT
D-4



EXHIBIT
D-5



